IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 05-cv-01221-WDM

PAMELA K. PENNINGTON,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Miller, J.

    Claimant Pamela K. Pennington (Pennington) appeals a final administrative decision by defendant Jo Anne B. Barnhart (the Commissioner) finding that she is not disabled within the meaning of the Social Security Act.

Background

    Pennington was born December 1, 1957. She completed high school and two years of college. In the past she has worked as a human resources clerk, assistant manager of a non-profit organization, customer service representative, office manager, billing clerk, and teleconference reservationist.

    Pennington's medical records indicate a history of headaches since she was a child, as well as neck pain and degenerative disc disease due to a fall in the 1990's. In February 2001, another fall exacerbated Pennington's medical problems, and she began seeing Dr. Gina Bamberger, who became her primary treating physician. Since 2001, Dr. Bamberger and various consulting doctors repeatedly diagnosed Pennington with severe

fibromyalgia, migraines, and degenerative disc disease. In addition, there have been some suggestions of depression, but no actual diagnosis from a psychiatrist or a psychologist.

On February 5, 2003, Pennington submitted an application to the Social Security Administration for disability insurance benefits, claiming she became disabled as of September 3, 2002. After this application was initially denied, she received a hearing before an Administrative Law Judge (ALJ) on July 22, 2004. Following this hearing, the ALJ issued a decision finding no disability. Then, the Social Security Appeals Council denied Pennington's appeal, rendering the ALJ's decision final for purposes of appeal to this court.

## Standard of Review

I review the Commissioner's decision to determine whether her factual findings are supported by substantial evidence in the record as a whole and whether she applied the correct legal standards. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The commissioner must apply the correct legal standard, and must provide the court with a sufficient basis to determine that appropriate legal principles were followed. *Nielson v. Sullivan*, 992 F.2d 1118, 1119-1120 (10th Cir. 1993).

## Discussion

The Secretary has established a five-step evaluation process to determine whether

a claimant is disabled for purposes of the Social Security Act.  *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing [her] past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).

1.   Treating Physician Rule

Pennington first argues that the ALJ erred in failing to give her treating physician's opinion proper weight.  "[T]he opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians."  *Williams*, 844 F.2d at 757.  Under certain circumstances, treating source opinions are entitled to "controlling weight."  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  The Tenth Circuit has explicitly described how an ALJ must analyze a treating doctor's opinion:

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.  If the answer to this question is "no," then the inquiry at this stage is complete.  If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.  In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.  The agency ruling contemplates that the ALJ will make a finding as to whether a treating source opinion is entitled to controlling weight.

*Id.*  Even if a treating source opinion is not entitled to controlling weight, an ALJ must still consider the following six factors to determine what weight to give the opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and

extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  *Id.* at 1300-01; *see also* 20 C.F.R. §§ 404.1527(d)(2)-(6) & 416.927(d)(2)-(6)).

The ALJ's decision must be sufficiently specific to make it clear to any subsequent reviewers what weight the ALJ gave to the treating source opinions and the reasons for that weight.  *Id.* at 1301.  If the ALJ rejects the treating source opinion completely, he must give "specific, legitimate reasons" for doing so.  *Id.*

In this case, Dr. Bamberger opined that Pennington was physically unable to work a full eight-hour day.  Although the ALJ acknowledged that this opinion came from a treating physician, the ALJ still concluded that it was entitled to "little weight."  (Admin. R. at 18-19)  In doing so, the ALJ failed to follow the Tenth Circuit's directives regarding treating physicians.  There is no discussion at all of whether or not Dr. Bamberger's opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques."  Furthermore, even if he was not going to give Dr. Bamberger's opinions controlling weight, the ALJ was required to consider the other factors listed in *Watkins* in determining what weight the opinion should receive.  Yet, from the ALJ's opinion, I cannot determine whether the ALJ considered these factors, and if so, how they weighed into his conclusion.  Accordingly, under *Watkins*, I must remand for reconsideration of this issue.

*See also Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (remanding because the ALJ's reasons for rejecting a treating physician's opinion was not sufficiently specific); *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) ("Where the record on appeal is unclear as to whether the ALJ applied the appropriate standard . . . the proper remedy is reversal and remand.").

2.  Consideration of Pennington's Impairments in Combination

Pennington also argues that the ALJ erred by failing to consider all of her impairments in combination.  It is well established that throughout the five-stage process, the ALJ is required to consider the combined effect of all of a claimant's medically determinable impairments, even if some impairments, if considered individually, are not severe.  42 U.S.C. § 423(d)(2)(b)*; see also Langley*, 373 F.3d at 1123 (remanding because the ALJ's decision did not indicate that he considered the cumulative effect of claimant's impairments throughout the process); *Barrett v. Barnhart*, 355 F.3d 1065, 1068-69 (7th Cir. 2004) (holding that ALJ's failure to consider the cumulative effect of severe and non-severe impairments was reversible error).  And, although the "ALJ is not required to discuss every piece of evidence," *Clifton v. Chater*, 79 F.3d at 1009-10, meaningful review requires that the ALJ articulate the basis for his decision with sufficient detail to allow a reviewing court to determine that he followed the appropriate legal principles. *Nielson*, 992 F.2d at 1119-1120.  Accordingly, the Tenth Circuit has held that "[w]here the record on appeal is unclear as to whether the ALJ applied the appropriate standard . . . the proper remedy is reversal and remand."  *Baker*, 886 F.2d at 291; *see also Langley*, 373 F.3d at 1123 (reversing because "the ALJ's decision does not indicate that he

considered the cumulative effect of claimant's impairments").

In this case, it is not clear from the ALJ's opinion whether he considered all of Pennington's impairments in combination throughout the process. The ALJ does not claim to have done so, and nothing in the record allows me to conclude that he followed this rule. Indeed, if the ALJ's opinion can be read to indicate anything either way on this issue, the tone and progression of the opinion appear to indicate that the ALJ may very well have rejected Pennington's depression and migraines during the early stages of the process, and never considered them later on. Accordingly, under *Langley* and *Clifton*, I must remand for reconsideration.

3.   Pennington's Migraines

Pennington also argues that the ALJ erred in failing to properly consider her migraines. Her medical records clearly demonstrate a long history of chronic and severe migraines, occurring multiple times a week and sometimes lasting for days at a time, which are often accompanied by nausea and vomiting. (*See* Opening Br., Docket No. 7, at 18.) Nonetheless, it is unclear what effect Pennington's migraines had on the ALJ's step four and five analyses.[1] The ALJ specifically found that Pennington's migraines were severe enough that they created "significant vocationally relevant limitations." (R. at 15.) But he also gave many reasons for doubting Pennington's credibility on her subjective claims of pain, finding that "her symptoms are not as severe as she alleges." (R. at 18.)

In making his credibility determinations, an ALJ is required to give "'specific

---

[1] The ALJ appears to have based his Residual Functional Capacity (RFC) findings mainly upon the findings of the Social Security Administration's consultative physician, and the State physician. However, it is not clear how Pennington's migraines factored into these doctors' analyses of her functional limitations.

6

reasons . . . supported by the evidence in the case record' and be 'sufficiently specific' to inform subsequent reviewers of both the weight the ALJ gave to a claimant's statements and the reasons for that weight.'" *Hayden v. Barnhart*, 374 F.3d 986, 992 (10th Cir. 2004) (quoting SSR 96-7p, 1996 WL 374186, at *4).  In this case, even assuming that the ALJ intended to include Pennington's migraines under his discussion of her general complaints of pain, his vague statement that Pennignton's symptoms "are not as severe as she alleges" does not indicate how severe the ALJ thought Pennington's migraines actually were.  In addition, it is not clear how the ALJ felt that the nausea and vomiting associated with Pennington's migraines affected her ability to work.  If these symptoms required her to miss one day of work every two weeks, would this render her disabled?  Neither the ALJ's opinion nor his questions to the vocational expert during the hearing address these issues. (*See* R. at 18 (RFC determination), 444-448 (vocational expert testimony))  Therefore, the ALJ's credibility determinations are not "sufficiently specific" with regard to Pennington's migraines, and his stage four and five determinations are therefore not supported by substantial evidence.

4.      Credibility Determinations

Finally, Pennington argues that the ALJ's credibility determinations are not supported by substantial evidence.  However, since the errors discussed above already require me to remand for reconsideration, I need not determine whether this issue alone would also require remand.  Still, I note that a few of the ALJ's reasons for doubting Pennington's credibility appear suspect.  For example, the ALJ used the fact that Pennington showed up to several examinations in sunglasses as evidence that her

7

symptoms are not as severe as alleged. However, it is not clear how Pennington's sunglasses cast doubt upon her credibility. In addition, the ALJ noted positive Waddell's signs as evidence of faking. However, the doctor's report the ALJ refers to only found two out of five Waddell's signs,[2] and merely mentions these results without interpreting them. (R. at 308.) In such a situation, it is improper for the ALJ to take it upon himself to interpret the examining doctor's test results.

## Conclusion

Based upon my review of the record in this case, I find that the ALJ committed reversible error in at least three ways: (1) he failed to demonstrate that he had considered the proper factors when determining what weight give to the treating physician's opinion; (2) he failed to demonstrate that he considered the cumulative effect of all of Pennington's medically determinable impairments throughout the five-step process; and (3) he failed to explain how Pennington's intermittent migraine headaches and related symptoms affected his analysis at the fourth and fifth steps of the process. Accordingly, the determination that Pennington is not disabled is reversed and this matter is remanded for proceedings consistent with this opinion.

DATED at Denver, Colorado, on September 25, 2006.

BY THE COURT:


s/ Walker D. Miller
United States District Judge

---

[2] In general, Waddell's signs are a group of physical signs thought to provide some indication of situations where a patient's pain may include psychological components.